### CLAY v. MAGONE, Collector.

*(Circuit Court, S. D. New York.   October 28, 1889.)*

CUSTOMS DUTIES—CLASSIFICATION—CELERY SEED.
>    Since the passage of the tariff act of March 3, 1883, (22 U. S. St. at Large, c. 121, p. 488,) such variety of celery seed as is not intended to be sown or planted to raise celery to be consumed by man, is not medicinal seed, but an aromatic seed, and is not edible, and is in a crude state, and not advanced in value or condition by refining or grinding, or by other process of manufacture, is not dutiable at 20 per centum *ad valorem* as "garden seed," under the provision for "garden seeds, except seed of the sugar-beet," contained in Schedule N of said tariff act, but is free of duty as "seed," under the provision for "seeds" contained in the free-list thereof.

At Law.   Action to recover back customs duties.

The plaintiff, on October 5 and December 12, 1887, and February 16, 1888, imported from Marseilles, France, into the port of New York 23 bales of celery seed. This celery seed, pursuant to the decision of the

treasury department, rendered March 23, 1887, and numbered 8,131, was classified by the defendant, as collector of customs at said port, as "garden seeds," under the provision for "garden seeds, except seed of the sugar-beet," contained in Schedule N of the tariff act of March 3, 1883, (Tariff Index, new, par. 465,) and duty thereon, pursuant to such provision, was exacted of the plaintiff at the rate of 20 per centum *ad valorem.* Against this classification and exaction the plaintiff made sufficient and seasonable protests, claiming that this celery seed was free of duty as "seeds of all kinds, except medicinal seeds, not specially enumerated or provided for" in the tariff act of 1883, under the provision therefor contained in the free-list thereof, (Tariff Index, new, par. 760,) or as "seeds aromatic, which are not edible, and are in a crude state, and not advanced in value or condition by refining or grinding, or by other process of manufacture, and not specially enumerated or provided for in this act" under the provision therefor contained in said free-list, (Tariff Index, new, par. 636.) Thereafter the plaintiff, within the time required by law, duly made appeals to the secretary of the treasury, and, within 90 days after adverse decisions were made thereon by him, duly brought this suit to recover the duties exacted as aforesaid.

Upon the trial of this suit it appeared that each of the aforesaid 23 bales contained about 200 pounds of celery seed; that this celery seed was a very cheap article, and was always purchased without statement from the seller, or marks on the bales or packages containing the same, to indicate what kind of celery it would produce if sown or planted, or that, if sown or planted, it would even germinate; that it could not, therefore, be sold to those who sow or plant celery seed to raise celery; that while, to some small extent, it was used in making medicinal preparations, it was generally used in making celery salt and other condiments for soups and other articles of food for mankind; that it was not medicinal seed, but aromatic seed; that it was not edible, and was in a crude state, and not advanced in value or condition by refining or grinding, or by other process of manufacture; that at and prior to the passage of the aforesaid act of 1883 the term "garden seeds" in trade and commerce of this country meant seeds that were sown or planted to produce plants, vegetables, or other crops that were generally eaten by mankind; that at that time in this country celery seed sown or planted was sown or planted to produce celery which was exclusively so eaten; that at that time much the greater portion of celery seed produced in this country was sown or planted for that purpose; and that at that time in this country celery seed sold to be sown or planted was sold with marks, etc., to indicate and guaranty the kind of celery it would produce.

*Comstock & Brown,* for plaintiff.

*Edward Mitchell,* U. S. Atty., and *Thomas Greenwood,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*charging jury.*) The method of fixing rates of duty, by varying them according to the uses to which articles imported may be put, is, no doubt, a very philosophical and logical way of classifying articles for duty

under the tariff, but in practice it is at times extremely inconvenient; so much so that, unless the language of the tariff clearly indicates a plain intent on the part of congress that the article legislated upon should be classified according to its use, a court should be cautious in determining the rate of duty by the application of such test. Of course congress does repeatedly legislate in that way. Thus we have a provision for substances of all kinds used for manure, and one for animals imported for breeding purposes; and there are a number of other instances in the statute where imports are classified according to their use. But, unless the language of the statute plainly requires the test of use to     applied to a particular article, the dutiable character of any particular importation is not to be determined by an inquiry into its ultimate use. In the case at bar we have a word, or a phrase rather, which, as used, leaves it somewhat uncertain as to whether congress did or did not mean to apply the test of use. The phrase is "garden seeds." This may mean either seeds intended for use in the garden, or the class of articles known commercially as "garden seeds." There is testimony in the case that there was a distinct trade meaning of the phrase "garden seeds," known in trade and commerce of this country, and that congress adopted the phrase and put it in the tariff act. With regard, however, to the determination of the question whether or not we should interpret that phrase here as meaning the same thing as "seeds used or to be used for the garden," there is nothing left for this court to decide. That question has been considered by the supreme court in the case of *Ferry* v. *Livingston*, 115 U. S. 542, 6 Sup. Ct. Rep. 175, and the rule there laid down is, of course, controlling here. There, this same section being before the court, and the question being whether certain seeds then under consideration were to be considered as "garden seeds" or as "agricultural seeds," the court held, indeed, that it would not be sufficient, to show that they were not "garden seeds," to show that they were used both in the garden and in the field, but they went further, and indicated that if it appeared that the seeds in question (the particular cabbage seed then before the court) belonged to a variety not intended to be used to raise cabbages to be consumed by man, then they could not be regarded as "garden seeds." Now the same construction is to be applied here; and if we find (and that is the question which goes to you for your determination) that the celery seeds imported here were of a variety of celery seeds which was not intended to raise celery to be consumed by man, then it is not within the provision for "garden seeds," and your verdict must be for the plaintiff.

Verdict for plaintiff.